**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CAROLYN DUNCAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 4:20-cv-01874-SRC |
| | ) |
| CAPITAL ONE BANK, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Carolyn Duncan for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court directs plaintiff to file an amended complaint and appoints counsel for the limited purpose of assisting plaintiff with drafting her amended complaint.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as

true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who lives in Barton County, Missouri. She brings this civil action pursuant to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.* (Docket No. 1 at 2). Her complaint names six defendants: (1) Capital One Bank; (2) US Bank; (3) Experian; (4) Equifax; (5) Transunion; and (6) Innovis Data Solutions. (Docket No. 1 at 1). Plaintiff states

that all six defendants "did business with [her] in this state through mail means." (Docket No. 1 at 2).

In the complaint, plaintiff asserts that the FCRA imposes requirements upon credit reporting agencies (CRAs) to "employ reasonable procedures designed to assure the maximum possible accuracy of the information they report." (Docket No. 1 at 3). She further states that in March and April 2020, she "disputed an inaccuracy reported in…several credit bureau reports," stemming "from fraudulent transactions associated with an address in Pennsylvania." (Docket No. 1 at 4). Plaintiff provides no further factual enhancement as to what information was purportedly inaccurate.

Plaintiff alleges that she "reported to all necessary credit bureaus by their necessary procedures…that she had never been associated with certain addresses." However, the bureaus "all reported verifying that this fact was true." Plaintiff also states that "she challenged hard inquiry permissions…that she had not given, as well as the authenticity, validity, and existence of debts and amounts claimed and reported on the credit reports."

According to plaintiff, all the credit reporting bureaus addressed the "harmful and inaccurate activity reports." Nevertheless, plaintiff claims that the records have not been "quickly and timely deleted in [compliance] with time limits and proscriptions set forth by statute." (Docket No. 1 at 5).

On October 10, 2020, plaintiff noticed that her credit score "had dropped nearly 200 points." She attributed this drop to defendants putting "inaccurate, stale, and unverified info back onto and into [her] credit file." Plaintiff states that she "called and wrote to them immediately," trying to clear the problem "before it ruined business dealings and prospective business

arrangements, credit extension, and loans that [she] was seeking at the time." She does not indicate which of the defendants she specifically contacted.

Plaintiff asserts that "[t]hey finally indicated…that they do not know why all of the unverifiable information…was put back on the report or in the file after it was reported as deleted." (Docket No. 1 at 5-6). She blames this for causing her economic injury.

On October 29, 2020, plaintiff states that she "received a report/alert from" defendants, which said "that a dispute or disputes was/were open." (Docket No. 1 at 5). She asserts that she was not the one to open this dispute or disputes.

Plaintiff states that she had no other "remedy but to re-exhaust her complaint for correction with" defendants. (Docket No. 1 at 6). She also filed a complaint with the Consumer Financial Protection Bureau (CFPB). The CFPB allegedly "reported back" that it had "questioned" defendants. Plaintiff asserts that the CFPB advised her that defendants had "verified the accuracy" of the information which had caused her credit score to drop. She claims, however, that "none of the so-called creditors could come forth within the time allotted to demonstrate accuracy or non-violation" of Regulation Z of the Truth in Lending Act.

From October to November, plaintiff asserts that she lost "potential credit accounts, loans, and business dealings [for] which she needed her credit score to be 700 or better." She also "believes that much of the information that" defendants have "verified as inaccurate, incomplete, [and] unverifiable" has been "removed." However, plaintiff alleges that this was not done in a timely manner, "in violation of the statute and letter of the law."

Plaintiff concludes her complaint by suggesting that if defendants "show that the negative impact information has now been deleted," she "will voluntarily dismiss any lodged complaint

without any admission of guilt and without collecting or seeking further damages." (Docket No. 1 at 7). Barring that, she is seeking $100,000 in damages.

Attached to the complaint is an affidavit and two exhibits, marked "A" and "B." The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

Exhibit A is titled "Credit Disparagement Warning Notice – Cease and Desist Notice (Final Demand)." (Docket No. 1-2 at 1). It is addressed to Experian, Equifax, Transunion, Innovis Data Solutions, Credit Karma, and Dunn and Bradstreet, as well as six "unknown" creditors. (Docket No. 1-2 at 1-2). In the exhibit, plaintiff begins by acknowledging that her "investigator may have made a mistake about these specific accounts," and that she will not stop paying them or cancel them. (Docket No. 1-2 at 2). However, she seeks "the opportunity to review the debt." Plaintiff also offers to "satisfy the outstanding balance" by assigning a whole life insurance policy.

After this introduction, plaintiff goes on to state that she "contacted a specialist that [she] knew through friends and SEC investigators that [she] is friendly with." (Docket No. 1-2 at 3). This "specialist" evidently "suggested to [plaintiff] that there were indications that the contracts underlying the obligations reporting as negative reports and history on [her] credit reports…had been securitized[,] possibly for CUSIP and STRIPS registrations."[1] Plaintiff asserts that she is

---

[1] CUSIPS refers to Committee on Uniform Securities Identification Procedures. "A CUSIP number is a unique nine-character alpha/numeric code to a security by Standard and Poor's Corporation." *COR Clearing, LLC v. Calissio Resources Group, Inc.*, 2017 WL 5157607, at *4 (D. Neb. 2017). STRIPS refers to Separate Trading of Registered Interest and Principal Securities.

challenging her negative reports for this reason. She further demands that the entities identified in her cease and desist notice stop "publishing negative information." Later in the exhibit, plaintiff requests that the named entities "verify" the authenticity of every charge, and to contact her to "clarify the nature and current status of any obligation of payment or specific performance that they are claiming against [her]." (Docket No. 1-2 at 5).

Exhibit B appears to be a letter addressed to "all creditors." (Docket No. 1-2 at 6). In the letter, plaintiff states that due to the coronavirus, she is asking to "be given a moratorium and deferral on paying any credit [card] bill during the next six months," a period that may need to be extended. Plaintiff explains that she is "not able to make the present payment," and requests that this not be treated as a delinquency, and that payment be deferred "without interest or penalty." Finally, plaintiff asks "that any negative remarks on [her] credit file…be fixed," as "any delays" were due to "unforeseeable consequences," and were not her fault. (Docket No. 1-2 at 7).

### Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to the FCRA, naming Capital One Bank, US Bank, Experian, Equifax, Transunion, and Innovis Data Solutions as defendants. Because plaintiff is proceeding in forma pauperis, the Court has reviewed her complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the complaint is subject to dismissal for failure to state a claim. However, plaintiff will be allowed to file an amended complaint.

### A. Deficiencies in Complaint

As previously noted, plaintiff purports to bring this case under the FCRA. Congress enacted the FCRA "to address a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."

*McIvor v. Credit Control Services, Inc.*, 773 F.3d 909, 915 (8th Cir. 2014). *See also Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (explaining that the FCRA "was enacted in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy"); and *Hauser v. Equifax, Inc.*, 602 F.2d 811, 914 (8th Cir. 1979) (explaining that the FCRA is not meant to provide comprehensive regulation of the consumer reporting industry, but instead establishes a broad minimum standard of reasonable procedures that must be adopted by reporting agencies).

The FCRA places responsibilities on both CRAs and those that furnish them with information. *McIvor*, 773 F.3d at 915. It "has several mechanisms to protect consumer credit information, some of which apply to credit reporting agencies while others apply to users of the information provided by those agencies." *Poehl*, 528 F.3d at 1096. Furthermore, the FCRA "provides for recovery by a consumer upon a showing of willful or negligent failure to follow reasonable procedures." *Hauser*, 602 F.2d at 914.

With regard to a claim against a CRA, when a consumer directly disputes a debt with a credit reporting agency, the agency must "conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" if it is "inaccurate, incomplete, or cannot be verified." 15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. § 1681i(a)(5)(A). In other words, "if a consumer notifies a CRA of a dispute regarding the completeness or accuracy of information contained in the consumer's credit report, the CRA is required to conduct a reasonable reinvestigation of the disputed information and determine whether the information is inaccurate." *Ketsenburg v. ChexSystems, Inc.*, 2021 WL 963495, at *2 (E.D. Mo. Mar. 15, 2021).

As to a furnisher of information, to state a claim for violation of the FCRA, "a plaintiff must establish (1) a dispute regarding the accuracy or completeness of information from the CRA; (2) notice of the dispute from the CRA to the furnisher; and (3) the furnisher's failure to conduct an investigation, correct any inaccuracies, or notify the CRA of the results of the investigation." *Echols v. Cavalry Portfolio Services, LLC*, 2021 WL 426255, at \*2 (E.D. Mo. Feb. 8, 2021).

Here, plaintiff has made allegations against various CRAs, including Experian, Equifax, Transunion, and Innovis Data Solutions. She claims that they placed inaccurate information onto her credit report, and did not remove it in a timely manner. The facts she has provided, however, are insufficient to state a claim.

To begin, in order to make out a prima facie violation of the FCRA, plaintiff must present allegations showing that a CRA "prepared a report containing inaccurate information." *See Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (8th Cir. 1991). While plaintiff labels the information contained in her credit reports as "inaccurate," she provides no facts in support of this contention. That is, there is no indication as to the nature of the debt she owed in the first place, or any suggestion of what made it erroneous. Instead, she leaves these matters to the Court's speculation. Plaintiff's attachments complicate matters, as she includes an acknowledgment that she might "have made a mistake about these specific accounts," and asks for a "deferral on paying any credit card bill" for six months, thereby implying that she has already missed payments that have appeared on her credit reports. In short, her allegations regarding any inaccuracies in her credit reports are conclusory, and not sufficient to state a claim. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

Similarly, plaintiff has presented no facts indicating that procedures used by the CRAs were unreasonable, or that they failed to conduct a reasonable reinvestigation of the disputed information. Again, as above, plaintiff's pleadings are conclusory in this regard, assuming that defendants violated the FCRA without providing adequate factual support. For instance, plaintiff states that the inaccurate reports were not "quickly and timely deleted in [compliance] with time limits and proscriptions set forth by statute," but provides no facts indicating the time-frame in which this occurred.

Furthermore, plaintiff tends to refer to all the CRA defendants as a group, without delineating her interactions with each specific entity. For example, at one point, plaintiff states that she called "them," and then "spent over 2 hours to follow up." This allegation provides no indication as to which defendant she met by "them," or with which defendant she spent two hours "to follow up." In other words, it is not clear whether she is referring to Experian, Equifax, Transunion, or Innovis Data Solutions. This type of pleading, in which defendants are treated as an undifferentiated group, is insufficient to provide each particular defendant with notice of what they are accused of doing or not doing to harm plaintiff. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) ("The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved").

As to Capital One and US Bank, they are not specifically mentioned at all in the body of the complaint, despite being named as defendants. There are no allegations whatsoever regarding what they did or did not do. Thus, plaintiff has failed to state a claim against them.

For all these reasons, plaintiff has failed to state a claim under the FCRA. Because she is a self-represented litigant, however, she will be given an opportunity to file an amended complaint according to the instructions set forth below.

**B.  Order to Amend**

Plaintiff should type or neatly print her amended complaint on the Court's civil rights form, which will be provided to her. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible. In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party she is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should fill out the complaint form in its entirety, and ensure that it is signed.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting her claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). Additional sheets of paper may be used. Plaintiff should present factual allegations only, and avoid making any legal arguments.

In structuring her amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting her claim against that specific defendant. If plaintiff is suing more than one defendant, she should follow the same procedure for each defendant. **Plaintiff must provide specific allegations against each separate defendant**. She cannot simply make broad allegations against all the defendants as a group.

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's civil complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order, this action will be dismissed without prejudice and without further notice. In an order to follow, the Court appoints counsel for the limited purpose of assisting plaintiff with drafting her amended complaint. Appointed counsel must contact Plaintiff within five (5) business days of appointment.

11

**IT IS FURTHER ORDERED** that upon receipt of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 25th day of May, 2021.

_SL R. CR_

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE